that your company wanted them to pay $500.00, did it not? It was a paper reading something like this, Downing Paper Company, Dr., to your company, Jordan engine, June 9, 1903, $550.00? A. There was nothing said about a Jordan engine. Q. Well, merchandise, $550.00? A. $500.00. Q. How many statements did you send? A. I think I sent two or three. Q. All alike? A. Yes, sir. Q. Are any copies of your statements in your order book? A. No, we don't copy statements. Q. Did you get any answers to those statements? A. No. Q. Did you ever draw on them? A. No."

The bankrupt company did not take any evidence. It is not shown that the bankrupt company did put in another engine and test it in competition with the engine of the petitioners. The Dillon Machine Company allowed the engine to remain in the possession of the bankrupt from the time of shipment early in June, 1903, for about six months without inquiring whether the engine was approved, without agreement extending the time fixed in the contract, namely, 60 days on trial, and without inquiry as to the result of the test of the engine in competition with another engine, if such competition was had, and at the end of six months sent several statements to the bankrupt company claiming the price of the engine. The bankrupt company did not at any time express dissatisfaction with the engine or offer to return it, but retained it and used it, and by its acts asserted absolute ownership of it. Where there is a sale upon trial, with a time fixed by the parties, a failure to return the goods, or give notice in accordance with the agreement, makes the sale absolute. Butler v. School District, 149 Pa. 355, 24 Atl. 308, and cases cited.

Applying the law to the facts of this case, the sale of the engine must be held to be absolute, and the title to it is vested in the trustee. The Dillon Machine Company was allowed by the court to take said engine upon giving bond in the penal sum of $1,000 conditioned to abide by all the lawful orders of the court relating to said engine and the interests of the estate and its creditors therein.

It is ordered that the said Dillon Machine Company pay to the trustee the value of said No. 1 Jordan engine at the time the said engine was delivered to the Dillon Machine Company by order of the court.

Harry S. Hopper, for Dillon Mach. Co.
J. Siegmund Levin, for trustee.

HOLLAND, District Judge. For the reasons set forth in the report of the referee, the order recommended by him is approved. This order is as follows:

"It is ordered that the said Dillon Machine Company pay to the trustee the value of said No. 1 Jordan engine at the time the said engine was delivered to the Dillon Machine Company by order of court."

And it is so ordered.

---

In re TILLYER et al.

(District Court, E. D. Pennsylvania. July 8, 1905.)

No. 1,648.

BANKRUPTCY—DISCHARGE—GROUNDS FOR REFUSAL.

Evidence considered, and *held* not to sustain a specification of objection to a bankrupt's discharge, on the ground of a fraudulent concealment of property, by causing stock in a corporation in fact paid for by him, to be bought by his wife, and held in trust for his benefit, but to show that the stock was bought with the separate money of the wife.

In Bankruptcy.   On report of referee recommending discharge.

The following is the report of David Werner Amram, referee in bankruptcy:

William Tillyer and Issac H. Tillyer, individually, and trading as Tillyer Bros., were adjudicated bankrupts upon their own petition on May 22, 1903, and the matter was referred to me as referee. At the first meeting of creditors held before me the bankrupts were examined, and a copy of the testimony then taken is handed up with this report. Thereafter the bankrupts filed their petition for discharge, and objections were filed thereto by Albert J. Tillyer, administrator of the estate of. Charles Tillyer, deceased. The petition for discharge, and the specifications of objection, were thereupon by order of your honorable court, made on the 28th day of September, 1903, referred to me to ascertain and report the facts, together with the testimony and my findings thereon. I held several meetings at which testimony was taken on behalf of the objecting creditor, and a copy of the testimony is handed up with this report.

The specification of objection to the discharge of William Tillyer is entirely insufficient both in form and in substance, and I therefore recommend that this specification of objection be dismissed, and the discharge of William Tillyer granted. There were three specifications of objection to the discharge of Isaac H. Tillyer. The first and third specifications are insufficient in form and in substance, and were not pressed by the objecting creditor. I therefore recommend that they be dismissed. Objection might have been made to the sufficiency of the second specification of objection. Whether or not the bankrupt's failure to object to the sufficiency of the specification, and his willingness to submit in this proceeding to an examination on the merits, is a waiver of such defect need not now be considered, inasmuch as I am of the opinion that, even if the sufficiency of the specification of objection be assumed, the objecting creditor has entirely failed to substantiate the charge of fraud made therein. The objection to the discharge was made by the administrator of the estate of the bankrupt's father; the only creditor that filed a proof of debt and appeared in these proceedings. The charge is based upon the following alleged fact: That the wife of the bankrupt holds 80 shares of stock valued at $4,000 in the Vineland Window Glass Company, of which the bankrupt is superintendent and manager, and that she purchased this stock with money given to her by her husband, so that the certificates might be placed in her name under a secret trust for her husband, for the purpose of protecting them from his creditors.

The only testimony taken was that of the bankrupt and his wife, and this testimony shows that Mrs. Tillyer purchased the 80 shares of stock between the years 1899 and 1902, and that she paid the $4,000 for them with money derived from the following sources:

| | |
|---|---:|
| From the sale of a piece of real estate owned by her at Frankford avenue and Dauphin street in the city of Philadelphia | $1,200 00 |
| From two mortgages on a piece of real estate owned by her at 211 East avenue, Vineland, New Jersey | 1,400 00 |
| Cash of her own saved by her from moneys received from her husband | 100 00 |
| A loan made by her for which she gave the stock in the Window Glass Company as collateral security | 1,300 00 |
| Total | $4,000 00 |

The real estate in Philadelphia out of which Mrs. Tillyer realized $1,200 formerly belonged to Charles Tillyer, the bankrupt's father, but, on his death, the title vested in Julia Tillyer, his widow, and Isaac Tillyer, Harriet Brown, William Tillyer, and Albert Tillyer, his children. The property was thereafter sold by the sheriff under a judgment of Julia Tillyer against her husband, and bought in by her at the sheriff's sale. Immediately thereafter, to wit, on September 26, 1895, she conveyed her title to Kate Tillyer, the bankrupt's wife, and three years later, to wit, on November 15, 1898, Harriet Brown, Albert

Tillyer (the objecting creditor) and William Tillyer joined in a deed of their interest to Kate Tillyer, and about two months later she (her husband joining her) sold the property to William Arnell, and it was out of this sale that she made the $1,200. This $1,200 was given by her to her husband, the bankrupt. He repaid it in payments made to her from time to time out of his salary as superintendent of the glassworks, and she used the money thus repaid to her by her husband to pay for a part of the stock in the glass company. The property at 211 East avenue, Vineland, was mortgaged by her for $1,400 more than she paid for it. According to her testimony, it appreciated in value to that extent, and enabled her to make the loan. All of these facts are uncontradicted, and show that the money paid for the stock in the glassworks was the money of Mrs. Tillyer, and not that of her husband, the bankrupt. There was other testimony, likewise uncontradicted, that the bankrupt owed his wife $2,300 for two loans which she made him in 1889 and 1892, respectively, and that the moneys which he had been paying to her out of his salary as superintendent of the glassworks was upon account of this indebtedness, as well as on account of the balance due her on the $1,200 loan.

It appears that 20 years ago the bankrupt had a grocery store in Philadelphia, and owned some building association stock; that he was then perfectly solvent, and had transferred his building association stock to his wife. He was about to give up his grocery store because he contemplated removing to Winslow, N. J., when, at the suggestion of his wife, he allowed her to continue to conduct the store in Philadelphia instead of selling it. He removed to Winslow to conduct a glass business there, and she kept the store in Philadelphia. While conducting the store in Philadelphia, she appropriated the profits thereof, as she considered it to be her property by gift from her husband; and with the moneys thus saved she kept up her building association stock. Subsequently she borrowed $1,900 and $400 from the building association, and gave the money to her husband. He lost it in the glass business in Winslow. He became insolvent, and his wife was one of his creditors to the amount of $2,300, and he now alleges that from time to time he paid her, out of moneys earned by him, small sums on account of this indebtedness. It is true that business relations between husband and wife, which are made the basis of claims against a bankrupt estate, or which are used for the benefit of either of the parties thereto in bankruptcy proceedings, are to be subjected to most careful scrutiny. Such transactions are rarely free from suspicion. The testimony in this case does not warrant the referee in finding that the allegations made by the husband and wife are untrue, and, in view of the fact that theirs is the only testimony in the case, the second specification of objection has not been sustained.

For the above reason, I recommend that the second specification of objection be dismissed, and that Isaac H. Tillyer be discharged.

William A. Carr, for bankrupts.
William S. Divine, for objecting creditor.

HOLLAND, District Judge. For the reasons stated in the report of the referee in this case, the recommendation that the bankrupts be discharged is approved; and it is so ordered.

---

In re SCHOFIELD.

(District Court, E. D. Pennsylvania. June 19, 1905.)

No. 387.

1. BANKRUPTCY—ASSETS OF ESTATE—LIFE INSURANCE POLICY.
    An endowment policy of insurance on the life of a bankrupt, payable to him at the end of the term if living, or in case of his prior death to his